UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY MORRIS (#132973),

                              CASE NO. 2:07-CV-10578
          Plaintiff,      JUDGE ARTHUR J. TARNOW
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CORRECTIONAL MEDICAL
SERVICES, INC.

         Defendant,
_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANT CMS'S MAY 7, 2012 MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 107)**

**I.** **RECOMMENDATION:** The Court should deny defendant CMS's May 7, 2012 motion for summary judgment (Doc. Ent. 107).

**II.** **REPORT:**

**A.** **CMS is the only remaining defendant.**

**1.** Plaintiff Dorothy Morris (#132973) is currently incarcerated at the Michigan Department of Corrections (MDOC) Women's Huron Valley Correctional Facility (WHV) in Ypsilanti, Michigan. On February 8, 2007, while incarcerated at the Robert Scott Correctional Facility (SCF) in Plymouth, Michigan, she filed this case pro se against seven (7) defendants: Correctional Medical Services (CMS), Dastgir, Ventocilla, Stovall, Kristenson, Armstrong and Caruso. Doc. Ent. 1 at 1, 5.

On August 5, 2008 and August 11, 2008, the Court entered stipulations and orders of dismissal as to five (5) defendants: Armstrong, Caruso, Kristensen, Stovall and Dastgir. Doc.

1

Entries 43 and 44.

**2.**     However, on May 1, 2009, plaintiff via counsel filed a first amended complaint against one (1) defendant: CMS.  Doc. Ent. 58 at 1, 2 ¶¶ 3-4.  Therefore, defendant CMS is the only remaining defendant.

The facts underlying the complaint span the period from before June 2003 to at least June 5, 2006.  Doc. Ent. 58 ¶¶ 5-29.  The sole cause of action is an Eighth Amendment claim under 42 U.S.C. § 1983.  Doc. Ent. 58 ¶¶ 30-35.  Within her complaint, plaintiff alleges:

> 34.     CMS's deliberate indifference to Morris' serious medical needs was premised on an unconstitutional policy, practice or custom that resulted in a depravation of her Eighth Amendment right to reasonable medical care. For example, the Step II response states that Morris' "case was placed on 'Auto Deny.'" This "Auto Deny" procedure smacks of an unconstitutional internal policy, procedure or custom upon which CMS routinely denies coverage for serious medical care, giving rise to an Eighth Amendment violation. The fact that CMS repeatedly denied Morris' treatment indicates a pattern or practice of improper denials of physician recommendations. These and other instances of unconstitutional policies or customs giving rise to Morris' Eighth Amendment claim will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.
>
> 35.     CMS's deliberate indifference to Morris' serious medical needs by operation of an unconstitutional policy or custom is a violation of the Eighth Amendment of the U.S. Constitution and CMS is thus liable to Morris under 42 U.S.C. § 1983.

Doc. Ent. 58 ¶¶ 34-35.[1]

---

[1]The record in this case contains evidence of several grievances.  *See*, *i.e.*, Doc. Ent. 32-3; Doc. Ent. 39-3; Doc. Ent. 39-4 (WCF-2003-02-190-17i); Doc. Ent. 39-5 (WCF-2004-08-899-12d1); Doc. Ent. 39-6 (SCF-2006-02-677-12d); Doc. Ent. 39-7 (SCF-2006-02-677-12d3); Doc. Ent. 41-4; Doc. Ent. 41-5; Doc. Ent. 41-7; Doc. Ent. 62-10; Doc. Ent. 110-4; Doc. Ent. 111-4.

However, the grievance to which the May 1, 2009 first amended complaint refers is WCF-04-08-00899-12d1.  Plaintiff's August 19, 2004 Step I Grievance Form was received at Step I on August 20, 2004; Tate responded on September 3, 2004; plaintiff's Step II Appeal was received on September 20 or 27, 2004; Marcia Jenkinson's Step II response is dated October 20, 2004; Jim

**B.      The Court denied CMS's March 31, 2008 and May 29, 2009 dispositive motions.**

On March 4, 2009, I entered a report (Doc. Ent. 50) recommending that the Court deny without prejudice to renewal after the filing of an amended complaint defendant Correctional Medical Services, Inc.'s, March 31, 2008 motion to dismiss (Doc. Ent. 32). CMS filed an objection on March 19, 2009. Doc. Ent. 51. Then, on March 30, 2009, Judge Tarnow entered an order (Doc. Ent. 52) rejecting defendant CMS's objections (Doc. Ent. 51); adopting my report and recommendation (Doc. Ent. 50); and denying CMS's motion to dismiss (Doc. Ent. 32).

On February 1, 2010, I entered a report (Doc. Ent. 68) recommending that the Court deny defendant CMS's May 29, 2009 renewed motion to dismiss and/or for summary judgment (Doc. Ent. 62).[2] On February 24, 2010, Judge Tarnow entered an order (Doc. Ent. 70) adopting my report and recommendation (Doc. Ent. 68) and denying defendant CMS's renewed motion to dismiss and/or for summary judgment (Doc. Ent. 62).

**C.      Currently before the Court is CMS's May 7, 2012 Motion for Summary Judgment.**

Now before the Court is CMS's May 7, 2012 motion for summary judgment. Doc. Ent. 107. CMS puts forward three contentions in support of this motion. First, CMS asserts that there is no evidence upon which a reasonable jury could conclude that CMS had any personal

---

Armstrong's Step III grievance response is dated June 29, 2005. *See* Doc. Ent. 39-5.

In her October 20, 2004 Step II grievance response, Marcia Jenkinson (Regional Health Care Administration) stated, in part: "[o]n [August 10, 2004] CMS responded to Optometry and wanted information. As of [September 29, 2004] I do not see that the information was sent. Therefore, your case was placed on 'Auto Deny'." Doc. Ent. 39-5 at 5-6.

[2]This dispositive motion argued that "(1) Plaintiff's claims prior to February 8, 2004 expired due to the statute of limitations[,]" and "(2) Plaintiff did not properly exhaust her administrative remedies regarding her claims against CMS, and, therefore, the lawsuit is barred by 42 U.S.C. § 1997e." Doc. Ent. 62 at 2 ¶ 7.

3

involvement in the alleged incidents at issue in this action. Doc. Ent. 107 at 28-29. Second, there is insufficient evidence upon which a reasonable jury could conclude that plaintiff had an objectively serious medical need warranting protection under the Eighth Amendment. Doc. Ent. 107 at 29-32. Third, there is no evidence upon which a reasonable jury could conclude that plaintiff was subjected to deliberate indifference to her serious medical needs as the result of the execution of a policy, practice, or procedure connected to CMS. Doc. Ent. 107 at 32-37.[3]

On June 1, 2012 plaintiff filed an opposition to the motion for summary judgment which responds to each of the three contentions put forward by CMS. Doc. Ent. 110. On June 7, a corrected opposition was filed. Doc. Ent. 111.[4] On June 26, 2012, CMS filed a reply to plaintiff's corrected opposition. Doc. Ent. 113.[5]

**D.      Discussion**

**1.      Plaintiff's relevant medical history occurred from October 2002 to January 2008.**

---

[3]The attachments to this motion include (A) Michigan Department of Corrections Offender Tracking Information System Profile for Dorothy Morris, #132973 (Doc. Ent. 107-2); (B) Excerpts of medical records from the Michigan Department of Corrections pertaining to Dorothy Morris, #132973 [FILED UNDER SEAL] (Doc. Ent. 107-3); (C) Affidavit of Mark Ventocilla, O.D. (Doc. Ent. 107-4); (D) Affidavit of Gabriel Sosne, M.D. (Doc. Ent. 107-5); (E) Affidavit of Keith Ivens, M.D. (Doc. Ent. 107-6); (F) Excerpts of medical records from the TLC Eye Clinic of Michigan pertaining to Dorothy Morris [FILED UNDER SEAL] (Doc. Ent. 107-7); (G) Deposition transcript of Anne Clark, RN dated October 3, 2011 (Doc. Ent. 107-8); and (H) Deposition transcript of Keith Ivens, M.D. dated August 12, 2011 (Doc. Ent. 107-9). *See* Doc. Ent. 107-1 (Index of Exhibits); s*ee also* Doc. Ent. 108 (Sealed Exhibits B and F).

[4]The attachments to the corrected response include (1) Authorization Form (Doc. Ent. 111-2); (2) Excerpts of Hutchinson Deposition Transcript (Doc. Ent. 111-3); (3) Grievance Form (Doc. Ent. 111-4); (4) CMS Authorization Request (Doc. Ent. 111-5); (5) Patient Progress Notes (Doc. Ent. 111-6); (6) Excerpts of DeMasi Deposition Transcript (Doc. Ent. 111-7); and (7) 30(b)(6) Deposition Notice (Doc. Ent. 111-8). *See* Doc. Ent. 111-1 (Index of Exhibits).

[5]The attachments to the reply include (A) Declaration of Elizabeth Tate, RN (Doc. Ent. 113-2) and (B) *Cobbs v. Pramstaller*, 2012 U.S. App. LEXIS 7325 (6th Cir. April 10, 2012) (Doc. Ent. 113-3). *See* Doc. Ent. 113-1 (Index of Exhibits).

An extensive amount of medical records is available on this record.  Doc. Ent. 13-3; Doc. Ent. 15; Doc. Ent. 19; Doc. Ent. 90-3; Doc. Ent. 90-7; Doc. Ent. 91-1; Doc. Ent. 91-2; Doc. Ent. 107-3; Doc. Ent. 107-7; Doc. Ent. 108-1; Doc. Ent. 108-2.  However, in plaintiff's response to the instant motion, she specifically notes the following series of events:

- **Plaintiff was diagnosed with cataracts in October 2002, April 2003,[6] and on June 17, 2003 (during a clinic consultation with Ghulam Dastgir, M.D.).**  Doc. Ent. 108-1 at 2, Doc. Ent. 108-1 at 74.
- On June 23, 2003, removal of the cataract in plaintiff's right eye was authorized by Nurse Clark / CMS.  Apparently on July 15, 2003, appointments were scheduled for August 2003.  Doc. Ent. 108-1 at 75, Doc. Ent. 111-2.
- **On August 4, 2003, the cataract in plaintiff's left eye was removed.  During her August 5, 2003, clinic consultation, Dr. Dastgir noted that plaintiff "has a very dense cataract in the right eye and . . . cataract extraction with lens implant in the right eye should be done because her vision is extremely poor on the right and she needs this done."**  Doc. Ent. 108-1 at 45.
- On August 8, 2003, a request for authorization was faxed to CMS.  Doc. Ent. 111-5, Doc. Ent. 111-6.[7]
- **Plaintiff was seen at Midwest Eye on December 5, 2003.  The diagnosis indicated a very small cataract in the right eye.**  Doc. Ent. 108-1 at 43, 46.
- On May 7 and 20, 2004, plaintiff was seen by Ventocilla.  **The notes from the May 20, 2004 visit appear to indicate an intention to refer plaintiff for cataract evaluation.**  Doc. Ent. 108-1 at 71, 76.[8]
- Plaintiff's August 19, 2004 MDOC Step I Grievance complained that she could not see out of her left eye and could barely see out of the right eye.  Elizabeth Tate, R.N.'s September 3, 2004 response indicates that plaintiff's referral was denied by CMS.  Doc. Ent. 111-4.[9]

---

[6]The medical records appear to indicate that plaintiff saw Ventocilla on April 14, 2003.  Doc. Ent. 108-1 at 77.

[7]During September 2003, plaintiff saw Ventocilla.  Doc. Ent. 108-1 at 72.  On or about November 21, 2003, plaintiff was seen at WCF for deteriorating vision and signed a "Release from Responsibility for Medical, Surgical, Psychiatric and Other Treatment."  Doc. Ent. 108-1 at 78.

[8]On July 27, 2004, plaintiff saw Ventocilla.  Doc. Ent. 108-1 at 70.  On July 28, 2004, a note from the optometrist was faxed to CMS.  Doc. Ent. 113-2 at 9.  On August 10, 2004, WCF's request for authorization was pended by Anne Clark, R.N. / CMS.  Doc. Ent. 108-1 at 42.

[9]On September 28, 2004, plaintiff saw Ventocilla.  Doc. Ent. 108-1 at 69.  On March 15, 2005 and on June 7, 2005, plaintiff underwent an ophthalmic evaluation.  Doc. Ent. 108-1 at 65-66,

- On January 10, 2006, Dr. Ivens did not approve SCF's December 2005 request for a neuro-ophthalmology consultation.[10] In so doing, Ivens noted, "Our records show this patient has had vision loss since October 2003. Please review the chart again to see if there is a reason to readdress the problem after more than 2 years." Doc. Ent. 108-1 at 40.[11]
- On or about September 27, 2006, Ivens did not authorize SCF's request for ophthalmology consultation.[12] In so doing, he noted: "Please see referrals from 2005 & early 2006. No evidence of reversible vision loss[.]" Doc. Ent. 108-1 at 39.[13]
- Plaintiff filed the instant case on February 8, 2007. Doc. Ent. 1.
- Dr. Dastgir's November 6, 2007 consultation note indicated a "[v]ery dense nuclear cataract of right eye[,]" and "[s]ubconjunctival hemorrhage of the left eye." Doc. Ent. 108-1 at 37.
- The notes from Uyen H. Thai, D.O.'s November 6, 2007 Physical Exam acknowledge a "[d]ense nuclear cataract of right eye," and indicate that a request for consultation was submitted. Doc. Ent. 108-1 at 17.
- **On November 21, 2007, Regina Maxwell, R.N./CMS/UM responded that the criteria were met and authorized the right eye cataract extraction.** Doc. Ent. 108-1 at 16.
- **On January 7, 2008, plaintiff had cataract surgery on her right eye.** Dr. Dastgir's January 8, 2008 consultation note indicates that "the eye [is] looking excellent." Doc. Ent. 108-1 at 35.
- Dr. Dastgir's January 22, 2008 consultation note indicates "excellent results and excellent vision." Doc. Ent. 108-1 at 32.

*See* Doc. Ent. 111 at 5-10.

**2.      Plaintiff's claims against CMS are not based upon the theory of *respondeat superior*.**

**a.**      "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other

---

67-68. On June 8, 2005, an Authorization Request for an ophthalmology consultation was faxed to CMS. It was approved on June 13, 2005. On July 21, 2005, plaintiff was examined by Dr. Purohit. *See* Doc. Ent. 108-1 at 7, Doc. Ent. 108-2 at 2, Doc. Ent. 108-1 at 41 (CMS Specialty Consult Report). Plaintiff saw Ventocilla on November 23, 2005. Doc. Ent. 108-1 at 63.

[10]It appears that the related CMS Authorization Request is dated December 27, 2005. Doc. Ent. 108-1 at 6.

[11]Plaintiff saw Ventocilla on March 21, 2006 and April 11, 2006. Doc. Ent. 108-1 at 61, 62.

[12]It appears that the Authorization Request was faxed to CMS on September 15, 2006. Doc. Ent. 108-1 at 5.

[13]Plaintiff saw Ventocilla on October 24, 2006 and January 3, 2007. Doc. Ent. 108-1 at 59, 60.

6

words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

**b.** CMS argues that the evidence demonstrates that the numerous decisions in this case with respect to plaintiff's medical needs were made by particular individuals, and not CMS. Because *respondeat superior* is not a valid basis for liability under 42 U.S.C. § 1983, CMS is entitled to summary judgment. *See* Doc. Ent. 107 at 28-29.

**c.** Plaintiff asserts in her opposition to the motion for summary judgment that her case against CMS is not premised on the theory of *respondeat superior* and that she knows she cannot prevail on that basis. *See* Doc. Ent. 111 at 12.

**d.** In reply, CMS asserts that "[w]hile Plaintiff acknowledges that *respondeat superior* is not a viable theory of liability, to the extent that Plaintiff continues to equate the decisions of CMS's employees or independent contractors with CMS the corporation, such attempts must fail under *Monell*[,]" and that "Plaintiff's repeated attempts to attribute the individuals' decisions in this case with those of CMS are a blatant attempt to assert a nonviable theory of *respondeat superior*." Doc. Ent. 113 at 2 n.1, 4-5.

**e.** Plaintiff has made clear that her case against defendant CMS "is not premised on a theory of *respondeat superior*[.]" Doc. Ent. 111 at 12. Therefore, defendant CMS is not entitled to summary judgment on the basis that plaintiff's claims against CMS are based upon that nonviable theory.

**3.** **There is a genuine issue of material fact as to whether plaintiff's right eye cataract constituted a serious medical need**.

**a.** Defendant argues that this is a case in which plaintiff must establish a detrimental effect caused by the delay in her treatment, *i.e.*, during the several years which ensued before she

7

received cataract surgery on her right eye. Defendant notes evidence that plaintiff was constantly monitored by optometrists, ophthalmologists and medical doctors throughout the period at issue and that she did not develop any medical condition affecting her overall health or the health of either eye during this time. CMS asserts that the evidence fails to show any medical necessity for the removal of the cataract from plaintiff's right eye, but that in any event, this surgery was eventually performed with excellent results. *See* Doc. Ent. 107 at 29-32.

**b.** Plaintiff responds to this argument by a counter-argument that "very dense cataracts" and "extremely poor vision" are objectively serious medical needs. Doc. Ent. 111 at 12-16. She concedes the point put forward by CMS that a medical need is sufficiently serious only if a lay person would easily recognize the necessity for a doctor's attention, but also contends that delay alone in providing medical care may create a substantial risk of serious harm. She notes that on June 26, 2003, after she had been diagnosed with cataracts in October 2002 and April 2003 that were "rapidly progressing" and after Dr. Dastgir diagnosed her with cataracts on June 17, 2003, CMS authorized a cataract extraction from her right eye. Plaintiff also points to Dr. Dastgir's statement on August 5, 2003 that she had a "very dense cataract in the right eye and needed "cataract extraction with lens implant in the right eye ... because her vision is extremely poor on the right and she needs this done. Four years later, on November 6, 2007, Dr. Dastgir again found a "very dense cataract of the right eye" and stated that the cataract extraction "should be done on an urgent basis because the patient has very poor vision." On November 21, 2007 CMS finally authorized the cataract extraction in plaintiff's right eye and the procedure was performed on January 1, 2008. Finally, plaintiff points to the deposition testimony of Dr. Hutchinson, who had been designated by CMS as its Rule 30(b)(6) witness. Dr. Hutchinson admitted that "the

8

facts supported the medical necessity of a cataract extraction." Dr. Hutchinson asserted that CMS doesn't perform medical operations under any circumstances but acknowledged that it was not in the practice of authorizing unnecessary services and, when pressed by plaintiff's counsel, admitted that in July 2003 and November 2007 CMS concluded that cataract extraction in the right eye was medically necessary. Because Dr. Hutchinson was CMS' designated agent, it is bound by his testimony, argues plaintiff's counsel.

Plaintiff disputes defendant's contention that she must show a detrimental result from the delay in her treatment, saying her case is based on defendant's multiple determinations that cataract extraction surgery was necessary and that there was a total failure on CMS' part for more than four years to deliver on its own determination. If proof of detrimental effect from delay is required, her counsel points to reports in May and June of 2003 that her cataracts were "rapidly progressing" and that her poor vision was "getting worse." Plaintiff's counsel argues that her medical record therefore provides sound evidence establishing the negative effect on his client resulting from the four-year delay attributable to CMS because it did not arrange for a prompt cataract removal procedure that its own doctors had stated was necessary. Doc. Ent. 111 at 12-16.

**c.** In reply, CMS contends that *Cobbs v. Pramstaller*, No. 10-2089, 2012 WL 1194999 (6th Cir. Apr. 10, 2012) supports CMS's position that "Plaintiff's right eye cataract did not constitute an objectively serious medical need." Doc. Ent. 113 at 3. CMS argues that "Plaintiff failed to place any verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment." Doc. Ent. 113 at 4 (footnote omitted). CMS refers to this as an "alleged delay," because:

9

> . . . Plaintiff's right eye cataract did not constitute an objectively serious medical need. While CMS admits that the right eye cataract surgery was initially authorized in 2003, the physician who performed the surgery (who is not an employee of CMS and who is not being sued in this action) operated on the left eye instead of the right eye. Once Plaintiff's left eye cataract was removed without incident and with excellent results, the facts changed such that right eye cataract surgery was no longer necessary. While the cataract on Plaintiff's right eye remained unchanged, what changed was that Plaintiff's left eye cataract was removed and her vision in that eye was completely restored. In 2008, another health care provider made a decision to authorize cataract surgery in Plaintiff's right eye, and the cataract was removed.

Doc. Ent. 113 at 4 n.2.

**d.** The Sixth Circuit recently stated:

> A medical need is sufficiently serious if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir.2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990)). For obvious medical needs left completely untreated, "the delay alone in providing medical care creates a substantial risk of serious harm." *Id*. at 899. By contrast, where a " 'deliberate indifference' claim is based on a prison's failure to treat a condition adequately " or on "a determination by medical personnel that medical treatment was unnecessary," a plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Blackmore*, 390 F.3d at 897–98 (emphasis added) (citing *Napier v. Madison Cnty. Ky.*, 238 F.3d 739, 742 (6th Cir.2001)); *see also Blosser v. Gilbert*, 422 Fed.Appx. 453, 460 (6th Cir.2011).

*Cobbs*, 475 Fed.Appx. at 580.

Even if Clark's/CMS's authorization of the right eye cataract removal was initially dated June 23, 2003 (Doc. Ent. 108-1 at 75, Doc. Ent. 111-2), and even if Dr. Dastgir removed the cataract in plaintiff's left eye rather than the one in her right eye (Doc. Ent. 108-1 at 45),[14] there is a genuine issue of material fact as to whether, once the left eye cataract was removed on

---

[14]In his June 1, 2007 dispositive motion, Gastgir pointed out that he "[wa]s not a state actor in the rendering of his ophthalmologic services to Ms. Morris on medical referral such as occurred in this case and, therefore, [could not] be subject to Civil Rights violations." Doc. Ent. 13 at 3 ¶ 12.

August 4, 2003, plaintiff's right eye cataract remained an objectively serious medical need. As the record indicates, Regina Maxwell, R.N., apparently of "CMS/UM," concluded on November 21, 2007 that criteria had been met and authorized, among other things, "cataract extraction right eye[.]" Doc. Ent. 108-1 at 16.

This conclusion is buttressed by plaintiff's assertion regarding defendants' reliance upon the June 24, 2011 declaration of Gabriel Sosne, M.D., wherein Sosne states, "[i]n my professional medical opinion, within a reasonable degree of medical certainty, the cataract removal surgery of Plaintiff's right eye cataract was, at all times relevant, an elective procedure, and was never medically necessary." Doc. Ent. 107-5 ¶ 8. Specifically, plaintiff contends that "[w]hile Dr. Hutchinson unambiguously stated on behalf of CMS that Morris' cataract extraction was medically necessary,[15] Dr. So[sn]e opines that cataract extraction 'was never medically necessary.'" Doc. Ent. 111 at 14 n.1 (quoting Doc. Ent. 107-5 ¶ 8). According to plaintiff, "Dr. So[sn]e's self-serving 'expert' views are contrary to the record and CMS's own testimony in this case. They should be disregarded." Doc. Ent. 111 at 14 n.1.

Therefore, defendant CMS is not entitled to summary judgment on the basis that

---

[15]Craig Hutchinson, M.D., was deposed as a CMS corporate representative on April 6, 2012. During his deposition, he attested that CMS is "not in the practice of authorizing unnecessary services[.]" Doc. Ent. 111-3 (p. 36). He further attested, "[w]e can conclude that CMS decided – the CMS utilization staff decided that in November of 2007 it was medically necessary." Doc. Ent. 111-3 (pp. 36-37). Hutchinson also agreed that, "[b]ased on the information they had at the time," "CMS determine[d] in July 2003 that cataract extraction in the right eye was medically necessary[.]" Doc. Ent. 111-3 (p. 37). Additionally, Hutchinson stated, "when the facts supported the medical necessity of a cataract extraction, it was done." Doc. Ent. 111-3 (p. 50).

Furthermore, he said, "I think the record will provide lots of potential reason to question whether that was continuing to be medically necessary, until 2007 when it was authorized." Hutchinson was then asked, "[d]o very dense nuclear cataracts come and go?" Although the record does not contain his full response, he stated, "They don't go, but the degree to which they impair your . . ." Doc. Ent. 111-3 (p. 51).

11

plaintiff's right eye cataract did not constitute an objectively serious medical need.

**4.     There is a genuine issue of material fact as to whether CMS's policy, practice, procedure or custom, or lack thereof, resulted in deliberate indifference to plaintiff's right eye cataract.**

**a.**     "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694-695.

**b.**     Defendant's third argument in support of the motion for summary judgment contains a number of sub-parts. Doc. Ent. 107 at 32-37. First, defendant contends that there is no evidence upon which a reasonable jury could conclude that there was a policy, practice or procedure or custom involved in the alleged incidents at issue or that any such policy, practice or procedure was connected to CMS. Doc. Ent. 107 at 33. Secondly, CMS argues that there is no evidence that plaintiff's Eighth Amendment rights were violated at all, much less as a result of the execution of any policy, practice, procedure or custom connected to CMS. Doc. Ent. 107 at 33. Finally, defendant argues that there is no evidence that anyone was deliberately indifferent to plaintiff's serious medical needs as the result of the execution of any policy, practice or procedure connected to CMS. *See* Doc. Ent. 107 at 34-37.

**c.**     Plaintiff's counsel responds to CMS' third argument by arguing that CMS was deliberately indifferent to his client's serious medical needs "because it systematically denied [her] access to the medical care she needed between June 2[3], 2003 when CMS acknowledged her medical need [Doc. Ent. 111-2], and November 21, 2007 when CMS finally authorized it

[Doc. Ent. 108-1 at 16]." Doc. Ent. 111 at 16-17.

Counsel puts forward authority for the proposition that an absence of a policy designed to prevent denial or delay in the authorization of necessary medical treatment can constitute deliberate indifference and form the basis of liability. Counsel argues that the evidence would support a jury finding that CMS lacked a policy requiring that its own authorized medical procedures are actually carried out as well as a policy that a sound medical analysis (such as that performed by Dr. Dastgir on August 5, 2003) cannot be ignored or otherwise trumped by non-medical and uncontrolled "evaluations" such as, in the case of a dense cataract in *one* eye, a pencil toss, a facial recognition, or an ability to walk or write with *both* eyes open. Because CMS knew of plaintiff's serious medical need and knowingly refused to authorize the treatment she was legally entitled to, argues counsel, the evidence is sufficient for a jury to find that CMS was deliberately indifferent to his client's serious medical needs and is therefore liable for violating the Eighth Amendment. Doc. Ent. 111 at 16-19.

**d.**    In reply, CMS claims that plaintiff has not supported her claim against CMS. Doc. Ent. 113 at 4-5. Specifically, it argues that "any attempt by Plaintiff to allege that CMS, as a corporation, made any decisions with respect to any course of treatment regarding Plaintiff's cataracts is completely unsupported by evidence, and is contrary to all of the evidence cited in Plaintiff's brief." Doc. Ent. 113 at 4. Furthermore, CMS argues, "Plaintiff's newly asserted theory (which has never previously been asserted in this case), that CMS lacks a policy to prevent the delay of care, is completely unsupported by any factual evidence and is based solely upon attorney argument." Doc. Ent. 113 at 5.

**e.**    There is a genuine issue of material fact as to whether CMS's policy, practice, procedure

or custom, or lack thereof, resulted in deliberate indifference to plaintiff's right eye cataract.

"Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir.1985)). "Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by ... prison guards in intentionally denying or delaying access to medical care ....' for a serious medical need." *Blackmore*, 390 F.3d at 895 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As plaintiff points out:

> . . . an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (internal citations omitted).

As an initial matter, I note CMS's position that it "did not authorize the cataract extraction surgery; it was authorized by Anne Clark, RN." Doc. Ent. 113 at 2. However, both Clark's June 23, 2003 decision (Doc. Ent. 108-1 at 75, Doc. Ent. 111-2) and August 10, 2004 decisions (Doc. Ent. 108-1 at 42) were on forms labeled, "CMS" and "PENDED OR DENIED FORM."

Furthermore, plaintiff cites several cases which support the premise of her claim against CMS - that the lack of a policy, practice or procedure can be a the basis for a 42 U.S.C. § 1983 claim against a municipality. Doc. Ent. 111 at 18; *see Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("the record presents an issue of fact regarding the total lack of any

14

County policies, practices, and adequate training for this type of constitutional claim, and regarding whether the harm complained of resulted from the County policies, or lack thereof[.]"); *Howard v. Monroe*, No. 2:05-cv-81, 2008 WL 360638, 2 (W.D. Mich. Feb. 8, 2008) (where the policies or practices identified by plaintiff included "[f]ailing to have a policy to schedule surgeries in the time frame for surgeries on acute injuries to be effective[,]" and "[f]ailure to have a policy prioritizing approved surgeries based on urgent need[,]" the Court found that "a reasonable juror could conclude at least one of these alleged polices or practices deliberately caused or contributed to an unnecessary delay in Plaintiff's treatment resulting in aggravated injury."); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 583 (3d Cir. 2004) ("a reasonable jury could conclude from the evidence that by failing to establish such a policy the Center disregarded an obvious consequence of its action, namely, that residents of the Center could be at risk if information gleaned from the incident reports was not reviewed and acted upon. Similarly, a reasonable jury could infer that the failure to establish the policy was causally related to the constitutional violations of which A.M. complains."); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 585 (3d Cir. 2003) ("A reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."); *Andrews v. Camden County*, 95 F.Supp.2d 217, 229 (D.N.J. 2000) ("It is well established that in § 1983 suits, a municipality may be held liable for not having in place a policy that is necessary to safeguard the rights of its citizens, or for failure to act where inaction amounts to deliberate indifference to the rights of persons affected.").

In sum, plaintiff makes clear that her claim against CMS is that it "lacks a policy requiring that its own authorized medial procedures are actually carried out[,]" specifically pointing to the June 23, 2003 approval (Doc. Ent. 108-1 at 75, Doc. Ent. 111-2) and the denials related to the August 8, 2003 Request for Authorization by CMS (Doc. Ent. 111-5, Doc. Ent. 111-6);[16] the September 3, 2004 grievance response (Doc. Ent. 111–4);[17] the January 10, 2006 CMS Decision Form signed by Dr. Ivens (Doc. Ent. 108-1 at 40); and the September 27, 2006 CMS Decision Form signed by Dr. Ivens (Doc. Ent. 108-1 at 39). Doc. Ent. 111 at 19.

Plaintiff also makes clear that her claim against CMS is that it "lacks a policy stating that a sound medical analysis such as that performed by Dr. Dastgir on August 5, 2003 ([Doc. Ent. 108-1 at 45]) revealing a serious medical condition cannot be ignored or otherwise trumped by non-medical and uncontrolled 'evaluations' such as, in the case of a dense cataract in *one* eye, a

---

[16]In its reply, CMS refers to Hutchinson's April 6, 2012 deposition testimony, wherein he stated, "I think we've already established that CMS has no record of having received the request for the second cataract surgery in 2003." Doc. Ent. 111-3 (p. 36), Doc. Ent. 113 at 2. Conversely, the record indicates that on August 8, 2003, a request for authorization was faxed to CMS. *See* Doc. Ent. 111-5, Doc. Ent. 111-6. However, as plaintiff points out, "Dr. DeMasi clearly did not authorize the surgery, however, because Morris had to initiate the grievance process [on August 19, 2004] and file suit [on February 8, 2007] before the surgery was permitted to take place more than four years later." Doc. Ent. 111 at 17 n.2.

[17]In its reply, CMS contends that MDOC Nurse Tate's September 3, 2004 Step I grievance response (Doc. Ent. 111-4) "was not referring to a decision with respect to a request submitted on [August 8, 2003]." Rather, CMS contends, "the response referred to a request that was submitted on [July 28, 2004 (Doc. Ent. 113-2 at 9)] for Plaintiff to undergo an ophthalmology consultation (not for cataract extraction)[.]" Doc. Ent. 113 at 2-3. In her June 25, 2012 affidavit, Elizabeth Tate, R.N., who in 2004 was a State of Michigan Nursing Supervisor at the Western Wayne Correctional Facility, explains her September 3, 2004 grievance response (Doc. Ent. 111-4) as follows: "In stating that the referral was denied by CMS, [she] did not mean that CMS, as a corporation, made a corporate decision to deny an ophthalmology referral for Ms. Morris." Doc. Ent. 113-2 ¶ 13. Instead, she explains, she meant "that the referral request was placed on 'Auto Deny,' and deemed withdrawn, because Optometry never responded to RN Clark's decision on [August 10, 2004 (Doc. Ent. 108-1 at 42)] to pend the request and request for additional information." Doc. Ent. 113-2 ¶ 14.

pencil toss, a facial recognition, or an ability to walk or write with *both* eyes open. While it may not be unreasonable to perform such evaluations in the context of a thorough medical examination, CMS lacks a policy requiring its decision makers to explain why such evaluations trump sound medical diagnoses like that of Dr. Dastgir." Doc. Ent. 111 at 19.

Therefore, there is a genuine issue of material fact as to whether CMS's policy, practice, procedure or custom, or lack thereof, resulted in deliberate indifference to plaintiff's right eye cataract.

5.   **CMS's request for costs and attorney fees is premature.**

CMS seeks taxation of all reasonable costs and an award of attorney fees. Doc. Ent. 107 at 2, Doc. Ent. 113 at 5. These requests are premature. Should the Court enter judgment in favor of defendant, it may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). If defendant seeks attorney fees pursuant to 42 U.S.C. § 1988, it should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

**III.   NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated:9/28/12

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on September 28, 2012.

s/Eddrey Butts<br>
Case Manager